IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEFFREY HUANG, | § | |
| | § | |
| Plaintiff, | § | Case No. 1:23-cv-00683 |
| v. | § | |
| | § | |
| ZACHARY WOLK, | § | DEMAND FOR JURY TRIAL |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Jeffrey Huang, by and through his attorneys, brings this action against Defendant Zachary Wolk and respectfully alleges[1] as follows:

## INTRODUCTION

1. This case is about holding the Defendant, a self-proclaimed internet "sleuth" accountable for publishing and maliciously promoting an article that falsely presented Plaintiff as a criminal that had embezzled millions of dollars of cryptocurrency and manipulated markets.

2. Upon information and belief, Defendant does not maintain any meaningful employment to fund his activities and lifestyle. Instead, he solicits purported "donations" from his readers for financial support and publishes the results of his purported investigations on his Twitter account as well as on other online platforms, such as Medium.com.

3. As relevant here, in or around June 2022, Defendant published an article on Medium.com with a headline that Plaintiff contends falsely accused him of embezzling "22,000 ETH"—an amount of the cryptocurrency Ethereum equivalent to tens of millions of dollars of U.S. currency. As of the date of this filing, the following headline continues to appear on Medium.com:

---

[1] Plaintiff's allegations in this Complaint are based upon personal knowledge as to himself and his own actions and upon information and belief as to all other persons and events.




## 22,000 ETH Embezzled and Over Ten Projects Failed: The Story of Machi Big Brother (Jeff Huang)

4.      Just in case any readers failed to appreciate the significance of that libelous headline and the actual malice with which Plaintiff contends it was leveled, in the very first sentence of the article, Defendant immediately doubled-down on accusing Plaintiff of criminal conduct, specifically stating that, "Jeffrey Huang, known online as Machi Big Brother, is a former Taiwanese-American musician and tech entrepreneur who embezzled 22,000 ETH from Formosa Financial in 2018." Plaintiff contends that by virtue of the article's blaring headline and its opening line, the Defendant could not have been clearer in directly accusing Mr. Huang of personally embezzling 22,000 ETH from Formosa Financial.

5.      As if that were not bad enough, the Medium article also falsely characterizes Plaintiff as a market manipulator responsible for "pump and dump" schemes connected to numerous cryptocurrency projects. To wit, the second sentence of Defendant's article specifically accuses Plaintiff of attempted market manipulation on a reoccurring basis, contending that he had "launched over 10 failed pump and dump tokens and NFT projects."

6.      Then, after setting the table with these salacious – and defamatory – claims, Defendant assured his readers that he had "the receipts to back it up."

7.      But Defendant did not—and never did—have the "receipts" to back up his malicious presentation of Plaintiff as an embezzler of 22,000 ETH and the architect of numerous "pump and dump" schemes. Nor could he ever do so, for one very simple reason: Defendant's claims about Plaintiff's supposed criminal conduct are categorically false.

8. Regrettably, however, the absence of proof to justify his defamatory characterizations of Plaintiff as a thief and market manipulator did not stop Defendant from seeking to maximize the impact of the false claims targeting Plaintiff. Indeed, without any regard for the ruinous effect that public allegations of criminal conduct can produce for the accused individual, Defendant not only proceeded to publish his defamatory article on Medium.com, he also maliciously promoted the article to his more than 300,000 Twitter followers.

9. In other words, separate and apart from publishing the article in a public forum for anyone to see online, Defendant took deliberate steps to ensure that the article would be delivered directly to hundreds of thousands of people with an interest in the cryptocurrency industry. Through this proactive marketing tactic, on information and belief, Defendant sought to personally profit by attracting more "clicks" for the article, encouraging further republication of the article via "retweets" from his followers on Twitter, and attracting additional "donations" to fund his lifestyle, all at the expense of Plaintiff's reputation.

10. Making matters worse, despite repeated good-faith efforts to persuade Defendant to retract the false statements and take down the article, Defendant refused to do so. Indeed, as of the date of this filing, the defamatory article remains accessible both on Twitter and on Medium and continues to inflict serious reputational and monetary harm on Plaintiff.

11. As alleged in greater detail below, Defendant continues to stand by his defamatory statements against Plaintiff – presumably, due to the additional attention he's garnered from false claims – notwithstanding that he corrected the record for another individual that he wrongly accused of misconduct (apparently without a factual basis, as here).

12. Left with no other option, Plaintiff now seeks relief from this Court to hold Defendant accountable for the damage related to his false claims.

**PARTIES**

13. Plaintiff Jeffrey Huang is an individual who is a citizen and current resident of Taiwan. He is a highly successful musician and technology entrepreneur that has invested and contributed to an array of venture projects in emerging technologies over the years, including numerous innovative projects in the cryptocurrency industry. Prior to Defendant's defamatory article, Plaintiff's contributions to the industry made him a respected figure in the space with whom many start-up projects in the cryptocurrency industry have sought to associate.

14. Defendant Zachary Wolk is an individual who resides in Kingsland, Texas.

**JURISDICTION AND VENUE**

15. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) because Zachary Wolk is a citizen of Texas and Jeffrey Huang is a citizen of Taiwan, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. This Court has personal jurisdiction over Defendant because he transacts business in the State of Texas and in this District and because he committed tortious acts within the State.

17. Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in the Western District of Texas.

**FACTUAL BACKGROUND**

**A.   Plaintiff's Background and Emergence in the Cryptocurrency Space**

18. Plaintiff is a Taiwanese-American entrepreneur and innovative business leader who has founded numerous successful companies in the technology, music, social media, and cryptocurrency industries.

19. Over the course of multiple decades, Plaintiff has shown himself to be a creative entrepreneur with a keen instinct for finding success with emerging technologies. As just one

4

example, in 2015, Plaintiff founded 17 Media, a mobile application that offers live video streaming and real-time content sharing services and has become the number one live streaming app in Asia.

20. More recently, Plaintiff has become a successful entrepreneur and investor in the cryptocurrency space. As relevant here, in 2018, he agreed to serve as an advisor to Formosa Financial, a treasury management platform for the management of digital assets that includes custodial, brokerage, and risk management services.

21. In 2020, Plaintiff also founded C.R.E.A.M. Finance, a decentralized lending platform for individuals and institutions to access financial services related to cryptocurrency.

### B. Defendant's Internet Persona

22. Defendant, a self-proclaimed "on-chain sleuth," runs the Twitter account @zachxbt. Outwardly, the purported purpose of this account is to investigate and expose misconduct in the cryptocurrency space. Upon information and belief, however, the ulterior purpose of the account is to attract financial contributions for Defendant in the form of purported "donations," as well as other compensation from websites that publish his work.

23. According to Defendant, he has investigated "insider trading, rug pulls, undisclosed promotions, & other unethical behavior." He regularly publishes the findings of his purported investigations on his Twitter account or through other online platforms, including, as relevant here, the online publication website, Medium.com.

24. Notwithstanding his publication of false claims of criminal conduct, on information and belief, Defendant holds himself out as providing a valuable service to the world. Accordingly, he solicits "donations" or "tips" from his readers that he claims makes his work "possible." *See* Zachary Wolk (@zachxbt), Twitter (October 4, 2022, 9:53 AM), https://twitter.com/zachxbt/status/1577295846911221761.

25. On Twitter, users can elect to "follow" another user, which allows the "follower" to receive a direct feed of any Tweets or other content distributed by the user they are following. Each "follower" of a user has the option of "retweeting" content that a user generates or shares, which has the effect of republishing the content to their own audience of "followers."

26. Defendant's Twitter account currently has over 365,000 followers, and thus, each of his tweets describing his investigations are distributed to a substantial audience, each member of which has an opportunity to further distribute content that they receive on Twitter by "retweeting" posts to their own audience of followers. As such, an article distributed to 365,000 users on Twitter has the potential to reach distribution levels far into the millions.

27. In addition, Twitter users often share articles via other communication platforms, such as text message and email, further increasing the exponential potential for distribution of articles promoted via Twitter. On information and belief, Defendant took advantage of this exponential marketing potential to promote his false claims about Plaintiff for personal profit.

### C.  **Defendant's History of False Publication**

28. As Defendant already has admitted, his investigations have resulted in the publication of false information regarding other individuals in the cryptocurrency space.

29. For example, in 2022, Defendant posted a Twitter thread about two cryptocurrency traders, in which he accused them and their company of unethical business practices. As one of the traders said, the tweets "went viral and did huge damage [to] our brand and credibility." https://twitter.com/cryptomanran/status/1621457503727849475?s=46&t=PIA ywk87yQkjW3l0NTCu0A.

30. In February 2023, Defendant eventually conceded that his 2022 thread about the cryptocurrency traders contained various "inaccuracies." *See* Zachary Wolk (@zachxbt), Twitter

(February 3, 2023, 4:52 AM), https://twitter.com/zachxbt/status/ 1621446427091124224. Specifically, Defendant admitted that "some of the addresses" for the cryptocurrency wallets, Defendant claimed belonged to the two traders were "shown to not be owned by them." *See* Zachary Wolk (@zachxbt), Twitter (February 3, 2023, 4:52 AM), https://twitter.com/zachxbt/status/1621446429595115520.

31.     In other words, Defendant did not really have the "receipts" for that story either. This is just one other example of Defendant making serious and damaging accusations against individuals in the cryptocurrency space that were untrue. And so it is here.

### D.     **Defendant Publishes Defamatory Medium Article**

32.     As detailed above, on June 16, 2022, Defendant published an article on Medium titled "22,000 ETH Embezzled and Over Ten Projects Failed: The Story of Machi Big Brother (Jeff Huang)" (https://medium.com/@investigationsbyzachxbt/22-000-eth-embezzled-and-over-ten-projects-failed-the-story-of-machi-big-brother-jeff-huang-a1ad073fcfa8). *See* Exhibit A. The article levels numerous accusations against Plaintiff that the Defendant knew from his experience in analyzing cryptocurrency transactions to lack adequate supporting evidence.

33.     Without question, the most damaging claim in the article is the headline assertion by Defendant that Plaintiff "embezzled 22,000 ETH from Formosa Financial in 2018."

34.     Although Defendant well understood that he did not have "the receipts" to back up this defamatory headline, underscoring his actual malice, he nonetheless worked to sow the false impression that he did by stringing together a series of images, charts, and data that would not remotely suffice as proof that Plaintiff "embezzled" funds to a genuine "on-chain sleuth."

35.     For example, Defendant alleges in his Medium article that Plaintiff's transfer of a Bored Ape Yacht Club non-fungible token (the "BAYC NFT") *in 2021* to a wallet registered to

7

littlebang.eth shows that Plaintiff is connected to outflows from Formosa Financial to littlebang.eth *made three years earlier, in 2018*. Of course, Defendant did not highlight the massive temporal gap between these purported connections in the article and the objective absurdity of drawing inferences of criminal intent therefrom. Instead, he cited this purported connection as a key rationale for concluding that Plaintiff is an embezzler.

36. As an individual who devotes his time to investigating purported misconduct in the cryptocurrency industry, on information and belief Defendant understood very well that, in the context of a dynamic industry involving vast quantities of transactions, Plaintiff's attenuated link to littlebang.eth did nothing whatsoever to support the embezzlement accusation.

37. On information and belief, as a purported journalist focused on investigating misconduct in the cryptocurrency, Defendant also had a clear understanding of the terminology that he used, including, as relevant here, the term "embezzler." And he certainly had the means to verify the meaning of key terms leveled in the context of making accusations of criminal conduct.

38. Black's Law defines embezzlement as "[t]he fraudulent taking of personal property with which one has been entrusted, esp. as a fiduciary." EMBEZZLEMENT, Black's Law Dictionary (11th ed. 2019). Similarly, the United States Supreme Court has defined embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1895). This definition has been adopted in the Fifth Circuit. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). By any objective measure, the purported facts cited by Defendant in his defamatory article cannot remotely support the portrayal of Plaintiff as an "embezzler."

39. Not only did Plaintiff not embezzle funds from the Formosa Financial project, he also never had control of any Formosa Financial funds, making embezzlement factually

8

impossible. Indeed, on information and belief, Defendant understood perfectly well that, as a mere outside adviser to the Formosa Financial project, Plaintiff would have no way of directly accessing the allegedly stolen funds in the first place. Nor were those funds ever entrusted to Plaintiff's care – a necessary prerequisite to any act of embezzlement that Defendant conveniently ignored.

40. Still more, despite framing Plaintiff as the embezzler of 22,000 ETH in the headline and opening lines of the article, as the Defendant later acknowledged in the article, the Plaintiff did not access the Formosa Financial wallet or initiate the transfer of the 22,000 ETH in question at all. According to the Defendant, the founder and sole director of Formosa Financial initiated two transfers accounting for the 22,000 ETH that were directed to two different wallets.

41. In other words, despite blaring to the world that the Plaintiff had embezzled away assets entrusted to his care by Formosa Financial, the actual facts alleged by the Defendant confirm that to be a factual impossibility, insofar as Plaintiff was not employed by Formosa Financial, had no access to the assets at issue, and did not initiate the transfers in question. By his own admission, Defendant was aware of these exculpatory facts, but nonetheless maliciously ignored them for purposes of formulating a defamatory headline and story accusing Plaintiff of being an embezzler.

42. It would be clear to anyone with a baseline of knowledge related to blockchain transaction records and multi-signature authorization protocols, let alone an "on-chain sleuth" that the data points cited by Defendant do not suffice to support the conclusion that he offered about Plaintiff and, among other things, fail to account for the much more likely and obvious explanation that company insiders, rather than an outside advisor like Plaintiff, coordinated to orchestrate the transfers, as required by the multi-signature authentication protocol. But, on information and belief, Defendant did not let those facts get in the way of what he regarded to be a good story.

43. While Defendant was intimately familiar with these technical realities by virtue of his long-running focus on the blockchain industry, on information and belief, he intentionally ignored them for the purposes of advancing his malicious agenda to attack Plaintiff's reputation and falsely accuse him of criminal behavior.

44. As if that were not bad enough, on information and belief, Defendant's hit piece against Plaintiff was motivated by his desire to personally profit from the article and, to protect a personal investment that he had made in Breadcrumb Apps, a project of the former CTO of Formosa Financial, Lorne Lantz. On information and belief, unlike Plaintiff, Lantz actually did have direct access to the Formosa Financial funds. But by targeting Plaintiff with his malicious and defamatory accusations of embezzlement, Defendant conveniently helped his personal contact, Lorne Lantz, escape scrutiny for losing Formosa Financial funds under his control and, in the process, ensured that their shared investment in Breadcrumb Apps would not suffer.

**E. Defendant Doubles Down on False Allegations**

45. Not content to limit his malicious attack on Plaintiff's character to false allegations of embezzling funds from Formosa Financial, Defendant also attacked another cryptocurrency project Plaintiff was involved in with false and misleading allegations, claiming "Cream Finance has been exploited three times for more than $192m USD due to negligence."

46. Putting aside that Cream Finance was exploited two, not three times, as Defendant inaccurately reported, his article conspicuously omits the facts that over $100M USD had been recovered and returned to investors and that Plaintiff was not involved with Cream Finance at the time of the hacks.

47.  Plaintiff had already left Cream Finance during the hacks, leaving the protocol in the hands of a highly respected team in November 2020 prior to the exploits. The recovery of funds occurred only after Plaintiff returned to steward the protocol.

48.  Underscoring Defendant's actual malice, on information and belief, he deliberately omitted that a postmortem audit of the Cream Finance hack found that these exploitations were sophisticated and not the result of negligence, as Defendant falsely claimed.

### F. Defendant's Promotional Campaign and Profit Motive

49.  Further illustrating the malicious nature of his defamatory campaign against Plaintiff, Defendant took deliberate steps to maximize the impact of his false claims by promoting them using his Twitter account to his more than 300,000 followers. *See* Zachary Wolk (@zachxbt), Twitter (June 16, 2022, 10:01 AM), https://twitter.com/zachxbt/status/1537435280176623616.

50.  In sharing his defamatory Medium article with hundreds of thousands of followers, Defendant knowingly and intentionally exposed Plaintiff to the risk of millions of members of the Twitter community viewing and further redistributing libelous characterizations of Plaintiff as a criminal based on erroneous claims of evidence that simply does not exist.

51.  Consistent with his intentions, since Defendant made this initial post, the Medium article has been retweeted to users more than 2,190 times. It has also been posted (and reposted) to other social media sites, including Pinterest, Reddit, and Facebook. As a result, the defamatory article has been republished thousands of times to an audience spanning millions of people, inflicting ruinous reputational damage on Plaintiff in the process.

52.  In addition to being posted or reposted to other media sites, other online platforms have published pieces adopting Defendant's baseless accusations. *See* Anthony Clarke, "Crypto

entrepreneur Jeff Huang allegedly stole 22,000 ETH, ran over 10 failed projects," *CryptoSlate* (June 18, 2022, 12:00 AM), https://cryptoslate.com/crypto-entrepreneur-jeff-huang-allegedly-stole-22000-eth-ran-over-10-failed-projects/.

53. With each retweet and repost of the article, the false statements about Plaintiff reach a wider and wider audience.

### G. Mr. Huang Demands that Defendant Retract His False Claims

54. Within days after the publication of the defamatory article, Plaintiff reached out to Defendant to demand that he take down or retract his false statements.

55. Receiving no productive response from Defendant, on January 3, 2023, counsel for Plaintiff sent a letter to Defendant formally demanding that he retract the unfounded and highly damaging statements.

56. Defendant, however, again refused to retract or take down the defamatory statements and, through his counsel, indicated that he would "not retract any of the statements from the [Medium article] or remove any of the related social media posts at this time."

57. Defendant's false characterization of Plaintiff, which has been disseminated to millions of people, along with Defendant's refusal to retract his false accusations, has caused Plaintiff to suffer substantial damage to his reputation and standing in the cryptocurrency community. This, in turn, has resulted in significant damage to Plaintiff's current businesses and has caused him to lose other business opportunities.

58. These losses include significant decreases in value on various cryptocurrency projects, including Binance undelegating one of Plaintiff's projects, Cream Finance, resulting in it falling out of the top 21 in voting power and terminating their validator node, and causing a substantial loss in value in the process.

59. Defendant's false characterization of Plaintiff also contributed to Plaintiff's project Mithril being delisted from Binance, resulting in millions of dollars of damages.

60. Accordingly, Plaintiff seeks to recover monetary damages in an amount to be determined at trial.

## CAUSES OF ACTION

### COUNT I
(Libel)

61. Plaintiff repeats and realleges each and every allegation above as if set forth herein.

62. Defendant has published false statements claiming that Plaintiff embezzled 22,000 ETH from Formosa Financial in 2018.

63. These statements are untrue and defamatory in that Plaintiff did not embezzle or wrongfully take funds from Formosa Financial.

64. Not only did Plaintiff not embezzle funds from the Formosa Financial project, but he never even had control of any Formosa Financial funds, making embezzlement factually impossible. As a self-proclaimed journalist, on information and belief, Defendant was well acquainted with the importance of using accurate terminology, but nonetheless falsely characterized Plaintiff as an "embezzler."

65. Defendant has published false and misleading statements claiming Cream Finance, a cryptocurrency project Plaintiff was involved in, "has been exploited three times for more than $192m USD due to negligence."

66. These statements are untrue and defamatory in that Cream Finance was exploited two, not three times and over $100M USD was recovered and returned to investors. A hack postmortem audit found that these exploitations were sophisticated and not the result of negligence.

67. On information and belief, Defendant knew that these statements were false when he published them.

68. Defendant's statements constitute libel because they impugn Plaintiff's honesty, trustworthiness, and integrity by falsely claiming that Plaintiff took funds from Formosa Financial to which he was not entitled.

69. Defendant's defamatory statements have harmed Plaintiff's professional reputation and standing in his industry, have caused him economic harm, have caused him to incur lost income, and have caused him to lose business opportunities.

70. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, from loss of standing in the community, for which he is entitled to an award of monetary damages and other relief.

72. Defendant's statements were malicious, willful, wanton, and done with reckless regard for Plaintiff's rights.  As such, Plaintiff is entitled to an award of exemplary damages.

73. Underscoring Defendant's bad faith, prior to initiating this suit, Plaintiff demanded that Defendant retract the defamatory statements he published, but Defendant refused to do so, despite being presented with information that belied his false claims about Plaintiff.

## COUNT II
(Libel Per Se)

74. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

75. As alleged above, Defendant has published false statements claiming that Plaintiff embezzled 22,000 ETH from Formosa Financial in 2018.

76. These statements were untrue and defamatory in that Plaintiff did not embezzle or wrongfully receive funds from Formosa Financial.

77. Not only did Plaintiff not embezzle funds from the Formosa Financial project, but he never had control of any Formosa Financial funds, making embezzlement factually impossible. As a self-proclaimed journalist, Defendant was well acquainted with the importance of using accurate terminology, but nonetheless falsely characterized Plaintiff as an "embezzler."

78. As alleged above, Defendant has published false statements claiming Cream Finance, a cryptocurrency project Plaintiff was involved in, "has been exploited three times for more than $192m USD due to negligence."

79. These statements are untrue and defamatory in that Cream Finance was exploited two, not three times and over $100M USD was recovered and returned to investors. A hack postmortem audit found that these exploitations were sophisticated and not the result of negligence.

80. Defendant knew or should have known that these statements were false when he published them.

81. Defendant's statements constitute libel per se because they accuse Plaintiff of committing a crime, namely that Plaintiff embezzled funds from Formosa Financial.

82. Defendant's defamatory statements have harmed Plaintiff's professional reputation and standing in his industry, have caused him economic harm, have caused him to incur lost income, and have caused him to lose business opportunities.

83. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages in an amount to be determined at trial.

84. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, from loss of standing in the community, for which he is entitled to an award of monetary damages in an amount to be determined at trial.

85. Defendant's statements were malicious, willful, wanton, and done with reckless regard for Plaintiff's rights. As such, Plaintiff is entitled to an award of exemplary damages in an amount to be determined at trial.

86. Prior to initiating this suit, Plaintiff demanded that Defendant retract the false and defamatory statements he published, but Defendant refused to do so, despite being presented with information that belied his false claims about Plaintiff.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

   a. Order Defendant to pay Plaintiff actual and compensatory damages in an amount to be determined at trial for the damage to his reputation and his business prospects caused by the defamatory statements published by Defendant;

   b. Order Defendant to pay exemplary damages in an amount to be determined at trial;

   c. Award Plaintiff the costs of this action and his reasonable legal fees;

   d. Award Plaintiff pre- and post-judgement interest as allowed by law; and

   e. Award such other relief as the Court deems just and proper.

Dated:  June 15, 2023                              Respectfully submitted,

*/s/ Ryan C. Wooten*
Ryan C. Wooten
State Bar No. 24075308
Claudia Wilson Frost
State Bar No. 21671300
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
609 Main Street, 40th Floor
Houston, Texas 77002
Telephone: (713) 658-6400
Facsimile: (713) 658-6401
rwooten@orrick.com
cfrost@orrick.com

ATTORNEYS FOR PLAINTIFF JEFFREY HUANG